119 So.2d 636 (1960)
J. S. NOLEN et al., Plaintiffs-Appellees,
v.
J. Aubin BENNETT et al., Defendant-Appellant,
William Herbert Hunt, Defendant-Appellee.
No. 9171.
Court of Appeal of Louisiana, Second Circuit.
March 22, 1960.
Rehearing Denied April 28, 1960.
*637 Guy J. D'Antonio, Philip S. Finn, Jr., New Orleans, for appellant.
Meadors, Shaw & Meadors, Homer, J. R. Goff, C. E. Hall, Shreveport, for appellees.
GLADNEY, Judge.
Plaintiffs, proceeding under authority of the Uniform Declaratory Judgments Act, LSA-R.S. 13:4231 to 13:4246, seek a judgment determinative of the mineral rights in or under: E½ of NW¼ and NW¼ of NW¼, Section 35, Township 22 North, Range 4 West, Claiborne Parish, Louisiana, 120 acres, more or less.
Petitioners, J. S. Nolen and his five children, Mrs. Mozelle Andrews, Drew Nolen, James Fay Nolen, Ray Nolen and Doyle Nolen, name as defendants J. Aubin Bennett and William Herbert Hunt, Trustee for Hassie Hunt Trust, and pray for judgment in favor of J. S. Nolen, declaring him to be the owner of and entitled to all royalties and all the interest in the oil, gas and other minerals to a depth of 8,000 feet under the above described land. Further relief through judgment is sought decreeing that the ownership of the minerals as claimed by J. Aubin Bennett has since expired and become extinguished by virtue of the prescription of ten years, liberandi causa.
In the trial court after the rejection of certain exceptions which have been abandoned on the appeal, the cause was heard on its merits and resulted in judgment favorable to plaintiffs and William Herbert Hunt, Trustee of Hassie Hunt Trust. J. Aubin Bennett has appealed from the decree and William Herbert Hunt, Trustee of the Hassie Hunt Trust, defendant-appellee, has answered the appeal for the purpose of having this court amend the judgment by sustaining a plea of ten years prescription, liberandi causa, filed by him against the claim asserted by Bennett. The appeal by Bennett to the Supreme Court of Louisiana was transferred to this court.
For the purpose of clarity the following facts are set forth in chronological order:
W. H. Bennett, by cash deed dated March 12, 1937, conveyed to J. S. Nolen the ownership in fee of the above described property, the instrument containing the following reservation:
"The vendor, W. H. Bennett, reserves from this sale one-half (½) of all the oil, gas and other minerals in and under or that may be produced from the above described tract of land but especially grants to the vendee J. S. Nolen the right and privilege of executing oil and gas mineral leases covering the above described lands without the signature of W. H. Bennett, his heirs, successors or assigns; it being further agreed and stipulated that J. S. Nolen shall retain all of the bonus consideration paid for the execution of said oil and gas mineral leases and the said J. S. Nolen shall receive and have for himself all of the rentals which may be paid to keep in force and effect such oil and gas mineral leases as may be executed covering the above described tract of land.
"The said W. H. Bennett binds and obligates himself, if requested, to ratify such oil and gas mineral leases as may be executed by said J. S. Nolen, his heirs, successors, or assigns."
On October 13, 1942, W. H. Bennett executed a mineral sale to J. Aubin Bennett conveying vendor's reserved one-half of all the oil, gas and other minerals in or under the subject property.
*638 On January 15, 1943, J. S. Nolen executed an oil, gas and mineral lease covering the subject property in favor of Roy Lee, Trustee, who was then Trustee of Hassie Hunt Trust, said lease being for a primary term of ten years.
On November 10, 1945, the Department of Conservation issued Order No. 9-C providing rules and regulations for production from some of the sands found in the Northeast Lisbon Field and the Lisbon Field of Louisiana. (An inspection of this order shows that it has no application to any land situated in Section 35, Township 22 North, Range 4 West.)
The record discloses that during the year 1948 drilling was commenced and production secured upon the Hunt lease. On February 4, 1953, J. S. Nolen and his wife executed an act of donation in favor of their five children, plaintiffs herein, transferring in full ownership the subject property, but subject to the reservation in favor of the donors of all of the oil, gas and other minerals from the surface of the ground to a depth of 8,000 feet.
Upon trial in the lower court J. S. Nolen testified, over objection by counsel for appellant, that he never at any time intended to do any act which might prolong or extend the life of the minerals reserved by W. H. Bennett and it was not his intention that upon executing the lease to Roy Lee, Trustee, such act would have any effect on those minerals or interfere with the expiration of the rights of Bennett at the end of ten years from the date of the reservation, March 12, 1937.
The appellant herein defends upon two grounds: (1) that in the execution of the mineral lease granted in favor of Roy Lee, Trustee, J. S. Nolen acted as the agent of W. H. Bennett and such lease was a joint lease in contemplation of law, the effect of which was to interrupt prescription; and (2) Order No. 9-C of the Conservation Department had the effect of suspending the running of prescription against the mineral reservation by W. H. Bennett.
In our early oil and gas jurisprudence there were some pronouncements to the effect that where the landowner and the mineral owner have granted a mineral lease with the primary term running beyond the time when prescription for nonuser might accrue, but which lease did not contain an acknowledgment effecting an interruption of prescription, the mere act of execution of the lease alone was held to be indicative of an intention on the part of the landowner to extend the life of the servitude for such time as the lease remained in effect. Later decisions, however, commencing with Mulhern v. Hayne, 1931, 171 La. 1003, 132 So. 659, have qualified the rule of law so recognized and thereafter it has been consistently held that the making of such a lease will constitute an extension of the servitude only where it can be shown it was the intention of the parties to sign a joint lease. Bremer v. North Central Texas Oil Company, Inc., 1936, 185 La. 917, 171 So. 75; Massingale v. Little, 1938, 235 Ala. 292, 178 So. 539; English v. Blackman, 1938, 189 La. 255, 179 So. 306; Hightower v. Martizky, 1940, 194 La. 998, 195 So. 518; Achee v. Caillouet, 1941, 197 La. 313, 1 So.2d 530; White v. Hodges, 1942, 201 La. 1, 9 So.2d 433; Baker v. Wilder, 1943, 204 La. 759, 16 So.2d 346; Barnsdall Oil Company v. Miller, 1953, 224 La. 216, 69 So.2d 21; Elkins v. Roseberry, 1957, 233 La. 59, 96 So.2d 41.
In Barnsdall Oil Company v. Miller, supra [224 La. 216, 69 So.2d 24], the court stated that in resolving this question:
"It must clearly appear either from the contract itself that the landowner intended the agreement to be for the common benefit of the mineral owner and himself or, in cases where the language of the lease does not plainly express such an intention, from extraneous evidence submitted by the parties for the purpose of showing their intent."
The rule that the interruption takes hold in a joint lease is founded upon LSA-C.C. *639 art. 3520, which provides for cessation of prescription "whenever the debtor, or possessor, makes acknowledgment of the right of the person whose title they prescribed." The argument of appellant affirms that Nolen, pursuant to the provisions of the terms of the mineral reservation by W. H. Bennett was the authorized agent of the appellant in the execution of the lease. The contention is denied by the following legal authorities:
Mt. Forest Fur Farms of America, Inc. v. Cockrell, 1934, 179 La. 795, 155 So. 228 and Hightower v. Maritzky, 1940, 194 La. 998, 195 So. 518; LeDoux v. Voorhies, 1952, 222 La. 200, 62 So.2d 273. It was pointed out in Mt. Forest Fur Farms of America, Inc. v. Cockrell that aside from the landowners exploring his own land for minerals, he has only two possible sources of income or profit from dealing with his land: (1) The cash consideration or bonus which he may receive for the lease, and payments made for renewal of the lease; and (2) the royalty; and there was no reason why in disposing of the land the vendor could not reserve to himself both of these sources or a portion thereof, or dispose of both. The decision held that the reservation of the rights enumerated (1) were property rights, and stated [179 La. 795, 155 So. 229]:
"The reservation of the right to lease was not reserved to lease as agent, but was reserved for defendant the owner of the land, then being sold, his heirs and assigns, which means that the reservation was for their benefit, save as otherwise expressed therein."
The same contention encountered herein was made in the Hightower case. In discussing the point, Chief Justice O'Niell, as the organ of the court, 195 So. at page 520, said:
"The defendants argue that by these stipulations Findling appointed Hightower his agent to lease the land for the production of oil or gas, and to receive the price and rentals therefor. Hence they invoked the doctrine that one who holds possession of property as the agent for the owner cannot acquire title by prescription, or adverse possession. That doctrine has reference to prescription acquirendi causa, and is founded upon the fact that possession of property held by an agent for the benefit of the owner is not adverse possession. The doctrine has no application to this case,not only because we are dealing now with prescription liberandi causa, but also because the stipulations referred to, in the deed from Hightower to Findling, did not purport to make Hightower the agent of Findling for the purpose of leasing the land for the production of oil or gas or other minerals. It has been decided that such stipulations in a sale or reservation of the mineral rights in a tract of land do not constitute a mandate or power of attorney. Mt. Forest Fur Farms of America v. Cockrell, 179 La. 795, 155 So. 228. A case somewhat analogous is Childs v. Porter-Wadley Lumber Co., 190 La. 308, 182 So. 516. By the stipulations referred to, in the deed from Hightower to Findling, Findling merely consented that Hightower, being the owner of the land and having the right to three-fourths of whatever oil or gas might be produced from it, should have the exclusive right to grant mineral leases on the land and to collect any rental or bonus that might be due under the lease. But any lease that might have been granted by Hightower would have been granted not as agent for Findling but as owner of the land, notwithstanding it would have inured to the benefit of Findling, to the extent of his interest in the royalties, as an incident of his having the one-fourth mineral right in the land."
The jurisprudence is crystal clear that the provisions of the act of sale from Bennett to Nolen did not in any wise constitute *640 Nolen the agent of W. H. Bennett and his successor in title in connection with the leasing of the land. Therefore, forasmuch as the lease did not include the signature of appellant and since the doctrine of agency is without application, the lease may not in any wise be considered a joint lease. Furthermore, the record contains the uncontradicted testimony of J. S. Nolen that there was no intention on his part to bring about an interruption of the prescription. At this point we note that the objection made upon the trial to the admission of this testimony by Nolen is without merit. Barnsdall Oil Company v. Miller, supra.
The remaining contention of the appellant that prescription was suspended by reason of Order No. 9-C is without foundation for an inspection of the order discloses that it has no application to the land herein involved.
For the reasons hereinabove stated, the judgment will be affirmed. The request of the defendant-appellee that the judgment be amended to sustain his plea of prescription against J. S. Bennett is refused as being sufficiently covered by the judgment of the district court. The judgment is affirmed as modified and recast to read:
It is ordered, adjudged and decreed that there be judgment herein in favor of plaintiffs J. S. Nolen, Mrs. Mozelle Andrews, nee Nolen, Drew Nolen, James Fay Nolen, Ray Nolen, and Doyle Nolen, and against defendant J. Aubin Bennett, decreeing and declaring that the interest in the oil, gas and other minerals reserved by W. H. Bennett in that certain deed executed by W. H. Bennett in favor of J. S. Nolen dated March 12, 1937, File No. 112137, recorded in Book 102, page 535, of the Conveyance Records of Claiborne Parish, Louisiana, which covered and affected the following described lands, to-wit:
The E½ of NW¼ and NW¼ of NW ¼ of Section 35, Township 22 North, Range 4 West, Claiborne Parish, Louisiana, containing 120 acres, more or less, expired and became extinguished by the prescription of ten years liberandi causa on March 13, 1947, and that the same is no longer in force and effect.
It is further ordered, adjudged and decreed that there be judgment herein in favor of plaintiffs and against each of the defendants decreeing that the plaintiff J. S. Nolen is entitled to all of the royalties and rentals due under the terms of that certain oil, gas and mineral lease executed by J. S. Nolen, lessor, in favor of Roy Lee, Trustee for Hassie Hunt Trust, dated January 15, 1943, filed under File No. 152526, recorded in Book 134, Page 224, Conveyance Records of Claiborne Parish, Louisiana, which lease covered and affected the above described lands insofar as this lease affected and applied to all depths, zones and horizons from the surface of the ground down to 8,000 feet beneath the surface and that plaintiffs Mrs. Mozelle Andrews, Drew Nolen, James Fay Nolen, Ray Nolen and Doyle Nolen, are entitled to all royalties and rentals due under the terms of said lease, in the proportions of one-fifth (1/5) to each, insofar as it applies to depths, zones and horizons below 8,000 feet beneath the surface of the ground.
It is further ordered, adjudged and decreed that there be judgment herein in favor of defendant, William Herbert Hunt, Trustee for Hassie Hunt Trust, declaring the validity of that certain oil, gas and mineral lease executed by J. S. Nolen, lessor, in favor of Roy Lee, Trustee for Hassie Hunt Trust, dated January 15, 1943, together with all amendments and supplements thereto and that the same is in full force and effect.
It is further ordered, adjudged and decreed that defendant, J. Aubin Bennett, pay all costs of these proceedings, including costs of appeal.
HARDY, Judge (concurring).
Though I am in accord with all the findings of fact and the conclusions of law set *641 forth in the opinion of this court, I feel that the elaborate discussion of the issues involving the questions of execution of a joint lease and agency are superfluous. Reference to the reservation clause of the conveyance from Bennett to Nolen discloses that it has no application to any possible benefits arising from mineral development except as to a royalty interest in minerals, when and if produced.
In other words, it is my position that Bennett sold with the land all rights and benefits related to the leasing privilege and, therefore, the questions as to joint leasing and agency are completely immaterial and irrelevant.